## Case No. 6,204.

HATCH v. CHICAGO, R. I. & P. R. CO. et al.

[6 Blatchf. 105.] [1]

Circuit Court, S. D. New York. April 20, 1868.

REMOVAL OF CAUSES — JURISDICTION OF FEDERAL COURTS — CITIZENSHIP — NOMINAL PARTIES—INJUNCTION AGAINST CORPORATION — KNOWLEDGE OF EXISTENCE OF BY AN OFFICER BINDS.

1. A corporation created by a state other than the state of New York, does not, by reason of its having an office, and transacting material branches of its business, within the state of New York, or by force of the state statute of New York, of April 10th, 1855 (Laws 1855, c. 279), lose the privilege, which otherwise be-

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

longs to it, as a corporation created by another state, of having all its members regarded as citizens of that state, within the meaning of the acts of congress in regard to the removal of causes into the circuit courts of the United States.

[Cited in Morton v. Mutual Life Ins. Co., 105 Mass. 144.]

2. A suit brought in a state court of New York, by a citizen of New York, against a corporation created by a state other than New York, and against a citizen of a state other than New York, and against other defendants who are citizens of New York, cannot be removed into a circuit court of the United States in New York, under the twelfth section of the judiciary act of September 24th, 1789 (1 Stat. 79), unless the defendants who are citizens of New York are merely nominal parties to the suit.

[Cited in Amsden v. Norwich Union Fire Ins. Soc., 44 Fed. 517.]

3. Where the officers of a corporation are made co-defendants with the corporation to a suit in equity, but no relief is prayed for as to any of such officers that is not prayed for in respect to the corporation, and no relief is prayed for against any such officer in his individual capacity, such officers are merely nominal parties to the suit.

[Cited in Heath v. Erie Ry. Co., Case No. 6,-306; Doyle v. San Diego Land & Town Co., 43 Fed. 349.]

4. An injunction against a corporation, if served on an officer thereof, or even if known by him to exist, binds him to obedience.

5. A plaintiff cannot, by joining, as nominal defendants, with a corporation, persons who are citizens of the same state with the plaintiff, deprive the corporation of any right which it would otherwise have in respect to removing a cause into a court of the United States.

[Cited in Pond v. Sibley, 7 Fed. 135; Mayor, etc., of New York v. New Jersey Steam-Boat Transp. Co., 24 Fed. 818.]

6. When the proper steps to effect the removal of a cause under the said act of 1789 have been taken, and evidence thereof is presented to the state court, the right to have the removal made is perfected, and no action of the state court can either confer the right or take it away.

[Cited in Broadnax v. Eisner, Case No. 1,909.]

7. The discretion to be exercised by the state court in passing on the question as to whether such proper steps have been taken, is a legal discretion.

8. No order by the state court for the removal of the cause is necessary.

[Cited in Railway v. Stringer, 32 Ohio St. 476.]

9. If the defendant does all that is necessary to secure a removal, he can, whether the state court makes an order of removal or not, perfect the removal, by entering in the federal court, at the proper time, copies of the proper papers, and his appearance, and special bail, if necessary; and, when that is done, the cause will proceed in the federal court.

[Cited in Brigham v. C. C. Thompson Lumber Co., 55 Fed. 884.]

[Cited in Dunn v. Burlington, C. R. & N. Ry. Co., 35 Minn. 83, 27 N. W. 453; Rigg v. Parsons (W. Va.) 2 S. E. 83.]

10. When a case is removed under the said act of 1789, any injunction issued before its removal, ipso facto falls.

In equity.

These suits [by Rufus Hatch against the Chicago, Rock Island & Pacific Railroad Company, John F. Tracy and others] were originally commenced in the supreme court of the state of New York. The parties plaintiff and defendant to both suits were the same, except that Edward W. Dunham was a party to the second suit, and was not a party to the first suit. The suits now came before the court on a motion by the plaintiff to remand them to the state court, and on a motion by the defendants to dissolve injunctions granted in them by the state court.

John K. Porter and John E. Burrill, for plaintiff.

Charles O'Conor and Charles Tracy, for defendants.

BLATCHFORD, District Judge. These suits are now in this court, either as respects all of the defendants in each, or as respects the defendants the railroad company and Tracy, or one of them, in each, by virtue of certain proceedings for the removal of the same from the state court into this court, taken in the state court on behalf of the railroad company and Tracy. Those proceedings were taken under three several acts of congress—the twelfth section of the judiciary act of September 24, 1789 (1 Stat. 79), the act of July 27, 1866 (14 Stat. 306), and the act of March 2, 1867 (Id. 558). The state court made an order, in each suit, on the 15th of February, 1868, which recites, that the defendants the railroad company and Tracy, have presented their petition and affidavits, that the petition, among other things, prays for a removal of the cause into the circuit court of the United States for the Southern district of New York, in pursuance of the several acts of congress in such case made and provided, that the company and Tracy have entered their appearance in pursuance of said petition and said acts of congress, and that the said petitioners have given good and sufficient surety, as required in said acts of congress, by a bond, approved in said court and filed with the clerk thereof, and then orders that the surety so offered is accepted by said court, and that said court will proceed no further in the cause against the company and Tracy, or either of them, and that no further proceedings be had in said court against the company and Tracy, or either of them, and that the cause, as against the company and Tracy, is removed from said court to the circuit court of the United States for the Southern district of New York, in pursuance of the provisions of the said act of July 27th, 1866. The order states, that it "is granted under and pursuant to the last-mentioned act of congress, and is without prejudice, as therein provided, to the rights of the parties." Copies of certain process, pleadings, depositions, testimony, and other proceedings in the suits in the state court, have been filed in this court, which are asserted, and not denied, to be copies of all the process, pleadings, depositions, testimony, and other proceedings in said suits,

which existed therein when the orders for the removal were made by that court. The company and Tracy have entered, each of them, a general appearance in this court, in each suit. No one of the other defendants has entered any appearance in this court in either suit. The plaintiff, insisting that if the suits are in this court at all, they are here only as respects the company and Tracy, now moves to remand the suits to the state court, on the ground that a cause does not exist for the removal of either of the suits, in any respect, under any one of the three acts of congress referred to.

The complaint in each suit states, that it is brought on behalf of the plaintiff and of all other stockholders of the Chicago, Rock Island and Pacific Railroad Company who may elect to avail themselves of it and contribute to the expenses of the action. The plaintiff alleges, in the complaint in the first suit, that he is a stockholder in the company, and that the company is a corporation, and is organized by virtue of the laws of the states of Illinois and Iowa; that all the directors of the corporation except three reside in the state of New York; and that the individual defendants in said suit are, and have been since April, 1867, such directors. The gravamen of that complaint is, that the defendants are about, without right or authority, and without the sanction of the stockholders of the company, to make a contract, on the part of the company, to extend its railroad from Des Moines, Iowa, to the western boundary of Iowa, and to create a liability on the part of the company in respect thereto, and to use the moneys of the company for such purpose; that they have recently issued, in the name of the company, and sold in the market, at less than par. forty-nine thousand new shares of the capital stock of the company, in addition to ninety-one thousand shares previously issued, all the shares being of the par value of one hundred dollars each; that the proceeds of such new shares, which amount to more than four millions of dollars, are in the possession and control of the directors; and that the pretence on the part of the directors, in issuing the new shares, was, that such issue was necessary to enable the company to procure funds to construct such extension of its road, and was made for that purpose. The prayer of the complaint in the first suit is, for a judgment, that the defendants be enjoined and restrained from making any such contract, and from creating any such liability, and from using any of the moneys of the company for such purpose, or in execution of any contract to build such extended road, and from further increasing the capital stock of the company, and from using the proceeds of any of the new forty-nine thousand shares, except to redeem and extinguish such shares, until the stockholders of the company shall, at their next annual meeting, in June, 1868, or at any special meeting to be called for that purpose, have passed upon the action of the directors in issuing the new shares, and upon the disposition to be made thereof, or of the proceeds thereof, and in regard to the proposed extension of the railroad. The complaint also prays, that the defendants may, during the pendency of the action, be enjoined and restrained as above provided, and that a receiver of the proceeds of the forty-nine thousand new shares may be appointed. On this complaint, and on affidavits accompanying it, an ex parte injunction was issued by the state court, on the 6th of January, 1868, enjoining and restraining the defendants, until the further order of the court, as above prayed for.

The complaint in the second suit reasserts the allegations of the complaint in the first suit, and brings in, as an additional defendant, Dunham, who is the treasurer of the company, but not one of the directors. The principal allegations in the second complaint are, that a committee of the directors, consisting of five of them, and called an executive committee, have, by a majority vote, determined to close the transfer office of the company in the city of New York, and to remove all its books and valuable papers beyond the jurisdiction of the court; that the defendants have refused to allow said books to be examined or inspected by the stockholders; that they are about to remove all the money, securities, and property of the company beyond the jurisdiction of the court; and that they refuse to permit any transfer to be made, on the books of the company, of any of the shares of stock in the company. The prayer of this complaint is, for a judgment as asked for in the first complaint, and further, that the defendants be enjoined and restrained from removing any of the books of the company, or of the directors, or of the executive committee, beyond the jurisdiction of the court, and from preventing the plaintiff, or other stockholders, from obtaining an examination and inspection thereof, and from interfering with them in making such examination and inspection, and from removing the proceeds of the forty-nine thousand new shares of stock, or any other property or proceeds thereof, beyond the jurisdiction of the court, and from permitting to be made any transfer of any shares of the stock of the company, whether of the original ninety-one thousand shares, or of the forty-nine thousand additional shares, until a transfer of all the shares, whether original or additional shares, shall be permitted to be made without distinction, and from closing the office or place of business of the corporation in the city of New York, and that the defendants may be restrained during the pendency of the action. On the complaints in the two suits, and on affidavits on the part of the plaintiff, an ex parte injunction was issued by the state court, on the 7th of January, 1868, enjoining and restraining the defendants, until the further order of the court, as so prayed for in the complaint in the second

suit. It is provided, by the act of July 27th, 1866, that any injunction granted by the state court before the removal of the cause, against the defendant applying for its removal, shall continue in force until modified or dissolved by the United States court into which the cause shall be removed. A motion is now made to this court, on the part of the company and Tracy, to dissolve and set aside the said injunctions.

The motion to remand the causes to the state court will be first considered. It is not disputed that the plaintiff is a citizen of the state of New York; nor that the company is a corporation created either by the state of Iowa, or the state of Illinois, or both; nor that all the other parties defendant, except Tracy, are citizens of the state of New York. On the question of fact, on the evidence, as to the citizenship of Tracy, I concur with the view of Judge Cardozo, in the state court, that, for the purposes of a removal of the suits into this court, Tracy is a citizen of the state of Illinois. The petition to the state court, by the company and Tracy, was in proper form, they duly entered their appearance in the state court, and they gave good and sufficient surety, by a proper bond, as required by the acts of congress, and the state court accepted the surety so offered. Copies of all the proceedings in the state court have been duly filed in this court, and the appearance of the company and Tracy has been entered in this court. So far as formalities are concerned, therefore, every thing required by the acts of 1789 and 1866, to be done by the company and Tracy, to obtain and perfect the removal of the causes into this court, has been done by them.

The objection is taken by the plaintiff, that the company, although a corporation created by a state other than the state of New York, has, by reason of its having an office, and transacting material branches of its business, within the state of New York, and by force of an act of the legislature of that state, passed April 10, 1855, (Laws 1855, c. 279), lost the privilege, which otherwise would have belonged to it, as a corporation created by another state, of having all its members regarded as citizens of that state, within the meaning of the acts of congress in regard to the removal of causes into this court. That act is one providing for the mode of serving on a foreign corporation process in a suit. It is settled, by the decisions of the supreme court, that a corporation can have no legal existence out of the bounds of the sovereignty by which it is created, that it exists only in contemplation of law, and by force of that law, that where that law ceases to operate the corporation can have no existence, and that it must dwell in the place of its creation. Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519; Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286. It is also settled, by like decisions, that a suit against a corporation, in its corporate name, must be

regarded as a suit against citizens of the state which created it, the legal presumption being, that its members are citizens of that state, the only state in which the corporate body has a legal existence; and the legal presumption, therefore, being, that a suit against the corporation, in its corporate name, is a suit against citizens of the state which created it, and no averment or evidence to the contrary being admissible, to withdraw the suit from any jurisdiction which a court of the United States would otherwise have over it. Louisville, C. & C. R. Co. v. Letson, 2 How. [43 U. S.] 497; Marshall v. Baltimore & O. R. Co., 16 How. [57 U. S.] 314; Covington Drawbridge Co. v. Shepherd, 20 How. [61 U. S.] 232; Ohio & M. R. Co. v. Wheeler [supra]. It follows, therefore, that, for the purposes of jurisdiction by the courts of the United States, these suits, so far as they are suits against the company, are suits against citizens of the state which created the company. Such state was not the state of New York. Nothing done by the company in regard to the place or manner of transacting its business, and no statute of the state of New York in regard to it, can deprive it of the rights and privileges which thus belong to it, as a corporate body created by another state than New York. It is still a foreign corporation, so far as its entity and legal existence is concerned. In Pomeroy v. New York & N. H. R. Co., decided in this court, in December, 1857 [Case No. 11,261], it was held, that a foreign corporation, sued, by its own assent, by summons served on an agent in New York, was still a foreign corporation, resident in the state which created it; that it could not exist in New York in its corporate capacity, except as a New York corporation; that, as a foreign corporation, it could not be said to have any legal existence in New York; that its existence in the foreign state might be recognized in New York, and the exercise of many rights and privileges in New York might be permitted to it, either by express statute, or by comity; but that its corporate existence in New York could be created only by New York laws, and by making it a New York corporation.

These suits, therefore, are suits brought in the state of New York, by Hatch, a citizen of New York, against the members of the company, all of whom are citizens of the state which created the company, and which is a state other than New York, and against Tracy, a citizen of Illinois, and against other defendants, who are citizens of New York.

The first question is, whether the case is removable under the act of 1789. Under the twelfth section of that act, the suit, to be removable, must be commenced against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state. By the eleventh section of the same act, original jurisdiction is given to the circuit courts, of civil suits where "an

alien is a party, or the suit is between a citizen of the state where the suit is brought, and a citizen of another state." The language of the two sections is substantially identical in regard to the citizenship. Under the eleventh section, it was held, in Strawbridge v. Curtis, 3 Cranch [7 U. S.] 267, that each distinct interest must be represented by persons, all of whom are entitled to sue or may be sued in the federal courts; that is, that, where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts. Under the twelfth section, it was held by this court, in Ward v. Arredondo [Case No. 17,148], that a suit by a citizen of New York, against a defendant who was an alien, and a defendant who was a citizen of New York, could not be removed into this court by the alien, where the defendant who was a citizen of New York, was not a mere nominal party to the suit, but was a real and an indispensable party to the decision and final determination of the merits of the case. These decisions have always been followed by the courts of the United States, and it results from them, that these suits cannot be removed into this court, under the act of 1789, unless the defendants, other than the company and Tracy, are merely nominal parties to the suit.

The entire scope and object of the first suit, as shown by the complaint therein, is to restrain the company from extending its road beyond Des Moines, and from using any of its moneys or property for that purpose, and from issuing any new shares of stock, and from using any of the proceeds of the forty-nine thousand new shares, except to redeem and extinguish those shares, until the stockholders of the company shall, at a meeting, have passed upon the whole subject, and to have a receiver appointed of the proceeds of the forty-nine thousand new shares. The entire scope and object of the second suit, as shown by the complaint therein, is the same as in the first suit, and, in addition, to enjoin and restrain the company from removing its books or property beyond the jurisdiction of the court, and from interfering with the stockholders in examining the books, and from permitting any transfer of any shares to be made unless a transfer of all, without distinction, old and new, is permitted, and from closing its office or place of business in New York. All the relief that is prayed for in either suit is by injunction, except the prayer in the first suit for a receiver. All the relief by injunction is prayed for in respect to all of the defendants. No such relief is prayed for in respect to any defendant, other than the company, that is not prayed for in respect to the company. The suits are really, both of them, wholly against the company alone. The directors and the treasurer, who are its codefendants, are merely its servants and agents, through whom necessarily it acts. It was not necessary or proper to make them parties to the suit at all. The injunctions prayed for and the injunctions issued, if issued against the company alone, and served on any director, or on the treasurer, would bind the person so served to obedience, and, even without such service, knowledge by the officer of the existence of the injunction against the comapny, would bind the officer to obedience. People v. Sturtevant, 5 Seld. [9 N. Y.] 263, 277. The directors and the treasurer are, therefore, not real parties to the suits, but merely nominal parties. No personal demand is made against any one of them, nor is any personal accounting asked from any one of them, and it is only in his relation to the company, and in the official position that he occupies toward the company, that any one of them is made a party. The test of this is, that, if any one of the directors or the treasurer were to resign his office, he would necessarily cease, ipso facto, to be a proper party to the suit, and the plaintiff would be obliged to make his successor in office a party, and so on with every change. The reason for this would be, that, there being no relief prayed against the individual in his individual capacity, and the injunction asked being to restrain him merely from doing or not doing what his official relation to the company alone enables him to do, or to refrain from doing, when such official relation ceases, the relief asked and the injunction issued become, as to him, utterly futile. This would not be the case where he was made a party defendant, jointly with the corporation of which he was an officer, for the purpose of obtaining some specific relief against him on a personal liability, or in order to obtain a discovery from him in regard to matters peculiarly within his knowledge. There, the dissolution of his official relation would not affect the propriety of his being retained as a defendant. This view is conclusive to show that the entire real controversy in both suits, so far as it is shown by the prayer of the complaints. and which is the only guide the court can have, is between the plaintiff on the one side, and the company, as a corporate body, on the other. The plaintiff cannot, by joining as nominal defendants with the corporation, persons who are citizens of the same state with the plaintiff, deprive the corporation of any right which it would otherwise have in respect to removing the cause into this court. In Wormley v. Wormley, 8 Wheat. [21 U. S.] 421, 451, it was held, that the joining, as defendant in an equity suit in the circuit court, of a person who was a citizen of the same state with the plaintiffs, constituted no objection to the jurisdiction of the court over the suit. where such person was merely a nominal defendant, joined for the sake of conformity in the bill, and against whom no decree was sought; and the principle was

laid down, that the court would not suffer its jurisdiction to be ousted by the mere joinder of formal parties, but would decide on the merits of the case between the parties who had the real interests before it, whenever that could be done without prejudice to the rights of others. This doctrine is as applicable to a jurisdiction conferred by a removal, as it is to one conferred by the bringing of an original suit. So, also, in Carneal v. Banks, 10 Wheat. [23 U. S.] 181, 188, where parties were made defendants to a suit in equity, who were citizens of the same state with the plaintiff, the court held that they were improperly made defendants, and that that fact could not affect the jurisdiction of the court as between the parties who were properly before it, and that the bill might be dismissed as to the improper parties, without in any manner affecting the suit against the proper parties.

The matter in dispute in the suit exceeds the "sum or value of five hundred dollars, exclusive of costs," within the meaning of that language, as used in the twelfth section of the act of 1789. The matter in dispute is a right claimed by the plaintiff, and denied by him to the corporation, and is a right concerning property, and a right having a known and certain value in money, which can be calculated and ascertained in the ordinary mode of a business transaction, and which is shown to be of the value, in money, of more than the sum of five hundred dollars, exclusive of costs. Barry v. Mercein, 5 How. [46 U. S.] 103, 120.

There is no satisfactory evidence that the company or Tracy, or any of the defendants in the suits, entered an appearance in the suits in the state court, or did any thing which was equivalent to the entry of such an appearance, prior to the entry of appearance made by the company and Tracy at the time they presented their petition to the state court for the removal of the suits. The sureties offered to the state court were good and sufficient, and were so held to be, by the state court by its acceptance thereof, as shown by the orders of that court to that effect. The sureties consisted of a bond in each suit to the plaintiff in the penalty of $5,000, reciting the filing of a petition and affidavits, by the company and Tracy, in the state court, for the removal of the suits into this court, and conditioned that the company and Tracy should, on the first day of the next session of this court, enter in this court copies of the process against the company and Tracy in the suit, and of all pleadings, depositions, testimony, and other proceedings in the cause affecting or concerning them, and of all other proceedings in the suit, and should also appear and enter their appearance in this court.

Everything, therefore, was done by the company and Tracy, that was requisite to effect a removal of the causes under the act of 1789. When the proper steps had been so

taken, and evidence of their having been so taken was presented to the state court, it was the duty of the state court to accept the sureties, and proceed no further in the causes. The right of the company and Tracy to have the removal made was perfected by the taking of those steps and the presentation of that evidence, and no action of the state court thereon could either confer the right or take it away. The discretion to be exercised by the state court in passing on the question as to whether the proper steps for a removal have been taken, and as to whether the evidence thereof is sufficient, and as to whether the surety is good and sufficient, is a legal discretion. Gordon v. Longest, 16 Pet. [41 U. S.] 97, 104. No order of the state court for the removal of the cause is necessary. The right of the defendant to a removal is not dependent on the question whether the state court does or does not make an order for the removal. If it were so dependent, the refusal of the state court, in a proper case, to make such an order, would make it impossible for the defendant to secure the removal, except by carrying the suit through the state tribunals, and then carrying it from the highest state tribunal to the supreme court of the United States, under the twenty-fifth section of the judiciary act of 1789. A defendant is not, however, where a state court is improperly proceeding in a cause, in violation of the twelfth section of the act of 1789, restricted to such mode of relief. Where the right to remove a cause is complete, the power of the state court, in respect to the cause, is at an end, and the defendant is not obliged to follow the cause further in any state court, either of original or appellate jurisdiction. Kanouse v. Martin, 15 How. [56 U. S.] 198. If he does all that is necessary to secure a removal, then, whether the state court makes an order of removal or not, he can perfect the removal, by entering in this court, at the proper time, copies of the proper papers, and his appearance, and special bail, if necessary. When that is done, the cause will proceed in this court. These observations are made for the purpose of showing that these causes are removed into this court under the act of 1789, and are removed wholly and not partially, and are removed as between all the parties thereto, the only parties thereto being those who are the real parties, namely, the plaintiff and the company, and that they are so removed, although the order of the state court in each case states that the cause is removed as against the company and Tracy, in pursuance of the act of 1866, and that such order is granted under and pursuant to the last-named act.

These cases having been thus removed into this court under the act of 1789, and being properly in this court under that act, it becomes unnecessary to consider any of the questions discussed by counsel as to removals of the cases under the acts of 1866 and

1867. The motion to remand the cases is denied.

Where a case is removed under the act of 1789, any injunction issued before its removal, ipso facto falls, for the reason that the twelfth section of the act, while it is careful to preserve the lien of an attachment issued before the removal, in certain cases, does not preserve an injunction, and, where congress has intended to preserve the lien of an attachment, and also continue in force an injunction, it has so expressly declared, as in the acts of 1866 and 1867. McLeod v. Duncan [Case No. 8,898]. The motion to dissolve the injunctions, was, therefore, unnecessary, as the injunctions are no longer in force. The motion is, therefore, denied.