# CHARLESTON.

## Rece *v.* N. N. & M. V. Co.

Submitted January 11, 1889.   Decided February 11, 1889.

**CORPORATIONS—LEGAL EXISTENCE.**
 1. A corporation exists only in contemplation of law and by force of law and can have no legal existence beyond the state or sovereignty, by which it is created.  (p. 170)

**CORPORATIONS.**
 2. While a corporation by the same name may be chartered

by two states clothed with the same capacities and powers and intended to accomplish the same objects and be exercising the same powers and duties in both states, yet in law there will be two distinct corporations,—one in each state,—with only such corporate powers in each state, as are conferred by its creation in that state.   (p. 171.)

CORPORATIONS—REMOVAL OF CAUSES.

3. One state cannot by a mere legislative declaration make all corporations created by charter or by the laws of other states domestic corporations of such state ; at least it can not by such declarations deprive the foreign corporation of its right to resort to the Federal courts, 'in cases where such right is conferred by the constitution and laws of the United States.   (p. 172.)

CORPORATION—RAILROAD COMPANIES—REMOVAL OF CAUSES—CONSTITUTIONAL LAW.

4. So much of section 30 chapter 54, of the Code of this State, as declares, that foreign railroad corporations doing business in this State shall in all suits and legal proceedings be held and treated as domestic corporations of this State, and requires every such corporation to file an agreement to that effect, is, so far as it attempts to deprive such corporation of the right to remove to the Federal courts suits brought by or against it in the courts of this State in cases, in which it would otherwise be entitled to such right, inoperative and void ; and such foreign corporation may exercise such right in any proper case, notwithstanding it has executed and filed such agreement in pursuance of the provisions of said statute.   (p. 173.)

*J. H. Ferguson* and *Simms & Enslow* for plaintiff in error.

*Gibson & Michie* for defendant in error.

SNYDER, PRESIDENT :

Action of trespass on the case, commenced June 29th, 1887, in the Circuit Court of Cabell county by Edna E. Rece, administratrix of T. H. Rece, deceased, against the Newport News & Mississippi Valley Company, to recover damages from the defendant for its negligence in causing the death of the plaintiff's intestate.   There was a verdict and judgment thereon in favor of the plaintiff for $5,000.00 ; and the defendant has obtained this writ of error.

The first error assigned is, that the Circuit Court improperly denied the motion of the defendant to remove the action to the District Court of the United States.   The declaration was filed at the July rules, 1887 ; and at the same rules the

defendant filed its petition and bond under the act of Congress, passed March 3, 1887, to remove the action to the District Court of the United States for the district of West Virginia sitting at Charleston in said district and exercising Circuit Court powers.   The petition was in proper form and alleged, that the matter in controversy exceeds $2,000.00 and is between citizens of different states; that the plaintiff was at the commencement of the action and still is a citizen of the state of West Virginia; and that the defendant was and still is a citizen of Connecticut, where it was incorporated under the laws of said state, and that it is not a citizen of the state of West Virginia.   At the August term, 1887, the plaintiff filed her answer, to which the defendant filed a written replication, and the court after overruling the respective motions of the plaintiff and defendant to reject said answer and replication for insufficiency decided, that the defendant by accepting the provisions of the Code of this State c. 54, s. 30, had become a corporation of this State, and denied the defendant's motion to remove the action to the District Court of the United States; and the defendant excepted.

The facts, upon which the court based its said ruling, as shown by the record, are as follows:   Prior to the year 1886, the defendant, The Newport News & Mississippi Valley Company, was incorporated under the laws of the State of Connecticut with power to construct, buy, hold, own, lease, equip and operate any railroads, bridges, ferries, warehouses, telegraph and telephone lines, wharfs, steamboats etc., in any State or Territory of the United States or foreign country, provided that said corporation shall not have power to lease, hold, own, or operate any railroad within the State of Connecticut.   This proviso was by the General Assembly of Connecticut in January, 1887, amended by adding thereto these words, "unless such railroad shall be held, owned or operated within said State in conformity with the provisions of the general railroad laws of this State."

The said company prior to the date of the injury complained of in the declaration became the lessee of the road, property and franchises of the Chesapeake & Ohio Railway Company, a domestic corporation and citizen of this State; and at said date and since as well as on and prior to the 27th

day of July, 1886, the defendant company was engaged as a public and common carrier for hire of passengers and all kinds of freights from the town of Newport News in the State of Virginia in and through the State of Virginia and this State to the city of Lexington in the State of Kentucky as such lessee of the said Chesapeake & Ohio Railway Company and other railroad companies; and that it was then and still is operating a continuous line of railways and carrying on interstate commerce in and through the States aforesaid, having its principal offices in the city of New York in the State of New York and in the city of Richmond in the State of Virginia; and that the defendant company did on said 27th day of July, 1886, by a writing duly executed under its corporate seal and filed in the office of the Secretary of State of this State accept the provisions of the Code of this State, c. 54, s. 30, and agree to be governed thereby. The said section 30 is as follows:

" Any corporation duly incorporated by the laws of any state or territory of the United States, or of the District of Columbia, or of any foreign country, may, unless it be otherwise expressly provided, hold property and transact business in this state, upon complying with the requirements of this section, and not otherwise." Then, after defining the powers and liabilities of such corporation, and prescribing the manner of filing its charter with the secretary of state *etc.,* the act proceeds: " Every railroad corporation doing business in this state under the provisions of this section, or under charters granted or laws passed by the state of Virginia or this state, is hereby declared to be, as to its works, property, operations, transactions, and business in this state, a domestic corporation, and shall be so held and treated in all suits and legal proceedings which may be commenced or carried on by or against any such railroad corporation, as well as in all other matters relating to such corporation. No railroad corporation which has a charter, or any corporate authority, from any other state, shall do business in this state as the lessee of the works, property, or franchises of any other corporation or person, or otherwise, or bring or maintain any action, suit, or proceeding in this state, until it shall, in addition to what is hereinbefore required, file in the

office of the Secretary of State a writing, duly executed under its corporate seal, accepting the provisions of this section, and agreeing to be governed thereby; and its failure to do so may be pleaded in abatement of any such action, suit, or proceeding; but nothing herein contained shall be construed to lessen the liability of any corporation which may not have complied with the requirements of this section, upon any contract or for any wrong."

The remaining portion of this section prescribes a penalty and the form of prosecution for the failure of the corporation to comply with the provisions thereof. No question is made as to the sufficiency of the bond or the time, at which the application for removal was made, or as to the form of the pleading, by which the question of the right of removal was presented.

The only controversy before us is, whether or not the facts above stated entitle the defendant to a removal of this action to the District Court.

It was suggested by the counsel for the defendant, that the provision of the statute is that " no railroad corporation * * * shall do business in this state as the lessee " etc., and that, as the defendant does not purport to be a railroad corporation, the statute does not apply to it. This point was not pressed in the argument, and, I think, properly not; for, while the name of the defendant, The Newport News & Mississippi Valley Company, does not include the word " railroad," the said company is by its charter authorized to construct, hold, own, lease and operate any railroad, and the record in this case distinctly shows, that it is and was on July 26, 1886, doing business as a railroad company in this state, and that it must therefore be regarded as such within the intent of said statute.

In *Railroad Co.* v. *Koontz*, 104 U. S. 5, it was decided, that a foreign corporation operating a domestic corporation under a lease of the road, property and franchises of the latter does not thereby forfeit or surrender its rights to remove into the Circuit Court of the United States a suit instituted against it in a court of the state which chartered the leased corporation by a citizen of that state. In that case the lessor

company was a Maryland corporation and the lessee a Virginia corporation, and in its opinion the court says:

"It is not denied, that the Maryland company derived all its power, so far as the operation of the Virginia road was concerned, from the Virginia corporation; nor that, in respect to the business of that road, it must do just what was required of the Virginia corporation by the laws of Virginia, but that does not, in our opinion, make it a corporation of Virginia. * * * A corporation, therefore, created by and organized under the laws of a particular state, and having its principal office there, is, under the constitution and laws, for the purpose of suing and being sued, a citizen of that state, possessing all the rights and having all the powers its charter confers."

So in the case at bar the fact, that the defendant has leased and is operating the railroad of a corporation of this State, does not make it a citizen of this state within the meaning of the constitution and laws of the United States. By a statute of the state of Wisconsin enacted in 1870 it was declared, that "any fire insurance company, association or partnership incorporated by or organized under the laws of any other state of the United States, * * * desiring to transact any such business (fire insurance) by any agent or agents in this state shall first appoint an attorney in this state, on whom process of law can be served, containing an agreement that such company will not remove the suit for trial into the United States circuit court or federal courts, and file in the office of the secretary of State a written instrument, duly signed and sealed, certifying such appointment, which shall continue until another attorney be substituted." 1 Tayl, St. § 22, p. 959.

While this statute was in force, The Home Insurance Company, a corporation of New York, established an agency in the state of Wisconsin and in compliance with the requirements of said statute filed in the office of the Secretary of State of that state, a written power of attorney duly executed by said company, in which is contained this clause: "And said company agrees, that suits commenced in the state courts of Wisconsin shall not be removed by the acts of said company into the United States Circuit or Federal courts." After-

wards the company issued a policy of insurance to one Morse, and, a loss having occurred under it, Morse sued the company in one of the state courts of Wisconsin. The company appeared in the state court and filed its petition to remove the case under the act of Congress into the United States Circuit Court for the district. The state court refused to remove the case, and judgment was rendered by it for the plaintiff. This judgment was affirmed by the Supreme Court of Wisconsin ( 30 Wis. 496,) and from this latter court the company took the case to the Supreme Court of the United States, which held, that the aforesaid statute was repugnant to the constitution of the United States and the laws made in pursuance thereof, and that it was therefore illegal and void; and further that the aforesaid agreement executed and filed in pursuance of said statute is also void and afforded no ground for the refusal of the state court to remove said action to the Federal court. *Insurance Co.* v. *Morse,* 20 Wall. 445.

The substance of this decision is, that a foreign corporation by a positive agreement made in pursuance of a state statute does not destroy its right to remove a suit brought against it in the state court to the Federal court. Our statute (Code, 1887, c. 54, s. 30,) and the agreement of the defendant filed in pursuance thereof do not directly or in terms stipulate, that the foreign corporation shall or will not remove any suit from the state to the Federal courts; but the statute does declare, that the corporation filing such agreement shall be, "as to its works, property, operations, transactions and business in this state a domestic corporation and shall be so held and treated in all suits and legal proceedings,   *   *   *   * as well as to all other matters relating to such corporation;" and thus it does indirectly take from the corporation the right to remove into the Federal courts any suit brought against it by a citizen of this State, because as a domestic corporation it can possess no such right. The question then arises : Does said statute make the defendant a corporation of this state ?

The following propositions of law are settled by the decisions of the Supreme Court of the United States : *First.* A corporation exists only in contemplation of law and by force of law and can have no legal existence beyond the

bounds of the state or sovereignty, by which it is created. It must dwell in the place of its creation. *Second.* Where a corporation is created by the laws of a state, the legal presumption is, that all its members are citizens of the state, by which it was created; and in a suit by or against it it is conclusively presumed to be a citizen of such state. *Third.* A corporation endued with the capacities and faculties it possesses by the co-operating legislation of two states can not have one and the same legal being in both states. Neither state could confer on it a corporate existence in the other nor add to nor diminish the powers to be there exercised. *Fourth.* The constitutional privilege, which a corporation has as a citizen of one state to sue the citizens of another state in the Federal courts can not be taken away by simply declaring it to be a corporation of the latter state. *Railroad Co.* v. *Wheeler,* 1 Black, 286; *Marshall* v. *Railroad Co.,* 16 How. 314; *Insurance Co.* v. *French,* 18 How. 404; *Insurance Co.* v. *Francis,* 11 Wall. 210; *Railway Co.* v. *Whitton,* 13 Wall. 270; *Muller* v. *Dows,* 94 U. S. 444; *Railroad Co.* v. *Alabama,* 107 U. S. 581, 2 Supt. Ct. Rep. 432.

In *Muller* v. *Dows, supra,* the court decided, that " a corporation created by the laws of Iowa, although consolidated with another of the same name in Missouri under the authority of a statute of each state is nevertheless in Iowa a corporation existing there under the laws of that state alone.

The court in its opinion in *Railroad Co.* v. *Alabama, supra,* says: " The defendant, being a corporation of the State of Alabama, has no existence in this State as a legal entity or person, except under and by force of its incorporation by this State, and, although also incorporated in the State of Tennessee, must, as to all its doings within the State of Alabama, be considered a citizen of Alabama, which cannot sue or be sued by another citizen of Alabama in the courts of the United States."

In the opinion in *Railroad* v. *Wheeler, supra,* the court says: " It is true that a corporation by the name and style of the plaintiffs appears to have been chartered by the States of Indiana and Ohio, clothed with the same capacities and powers, and intended to accomplish the same objects, and it is spoken of in the laws of the State as one corporate body,

exercising the same powers, and fulfilling the same duties, in both States. Yet it has no legal existence in either State, except by the law of the State, and neither State could confer on it a corporate existence in the other, nor add to nor diminish the powers to be there exercised. It may, indeed, be composed of and represent, under the corporate name, the same natural persons. But the legal entity or person which exists by force of law can have no existence beyond the limits of the State or sovereignty which brings it into life and endues it with its faculties and powers." 1 *Black*, 297.

The conclusion from these authorities is, that a corporation possessing the same name, powers, duties, franchises and purposes and composed of the same natural persons, if incorporated by two states, will be under the constitution and laws of the United States regarded and treated as two separate and distinct corporations of the respective States and not as one corporation existing in both States, and consequently no corporation of one State can be made a domestic corporation of another State by simply declaring that it shall be such. In order to make a corporation chartered by another State a corporation of this State, it must be chartered by this State. It will then be a domestic corporation of this State without reference to its charter in the foreign State with such powers, duties and franchises only as are conferred by the charter and laws of this State.

The defendant, The Newport News & Mississippi Valley Company, is conceded to be a foreign corporation created by the laws of the state of Connecticut, and it is not pretended, that it has been chartered as a corporation of this State, unless the statute under consideration, which merely declares, that it shall be a domestic corporation and so held and treated in all suits and legal proceedings, as well as in all other matters relating to it, makes it such. · The most that can be said to be done by this statute, is, that it attempts to adopt or naturalize this Connecticut corporation and all other foreign corporations and make them domestic corporations and citizens of this state without either chartering them as corporations of this State by any special act of the legislature or requiring them to obtain a charter and organize

themselves into domestic corporations under the general laws of this State.

If we are to hold the defendant to be a domestic corporation of this State, then we have the anomaly, or rather the absurdity, of a corporation without a charter, because according to the settled law we cannot look to the foreign charter in order to ascertain the powers, duties and franchises of a domestic corporation but alone to the authority conferred by its domestic charter and the laws of this State. The evident purpose of that provision of our statute, which declares, that the foreign corporation shall be a domestic corporation "and so held and treated in all suits and legal proceedings, which may be commenced or carried on by or against it," was to prevent such corporation from removing suits brought by or against it in the courts of this State to the Federal courts. This provision, if applied to a foreign corporation, would be in conflict with the constitution and laws of the United States and therefore inoperative and void. *Insurance Co.* v *Morse,* 20 Wall. 445.

The defendant here being, as we have seen, a foreign corporation notwithstanding the declaration of our statute, that it shall be a domestic corporation, the said provision of the statute, so far as it attempts to take from the defendant the right to remove any suit to the Federal courts as well as the agreement filed by it in pursuance of said provision, must be held inoperative to prevent such removal in any suit, in which it would have the right of removal under the constitution and laws of the United States.

I am therefore of opinion, that the Circuit Court erred in denying the petition and motion of the defendant to remove this action for trial into the District Court of the United States, as prayed for in its said petition ; and for said error alone the judgment of the said court is reversed, the verdict of the jury set aside, and the case is remanded to said Circuit Court with directions to it to enter the order required by the act of Congress in such cases, and to proceed no further in this case, unless its jurisdiction is restored by the action of the said District Court of the United States.

Reversed. Remanded.